ELSIE D. SHUSTER, widow of Mahlon C. Shuster, plaintiff below, plaintiff in error, *vs.* PHILADELPHIA, BALTIMORE AND WASHINGTON RAILDOAD COMPANY, defendant below, defendant in error.

*Writ of Error—Action for Damages—Death of Husband—Negligence—Proximate Cause—Fellow Servant—Vice Principal—Injured or Crippled car—Notice of to Servants—Rules—Instruction by Court below to find for Defendant—Judgment below Affirmed.*

1.  It appeared from the testimony that an injured or crippled car was to be moved from the line of the road to the Edge Moor yard of the defendant for inspection, etc. The superintendent of the division telegraphed to the conductor of the freight train, "move this car from Seaford to Edge Moor. Take it on next to your cabin car." The conductor testified that he understood this to mean that he should place said car next ahead of the cabin car. The accident was probably caused by so placing the car. *Held*, that if the conductor misinterpreted the telegram of the superintendent, and placed the injured car before, when he should have placed it behind the cabin car, and coupled them together by means of the chain, instead of the usual and uninjured coupling on the good end of the injured car, he was guilty of negligence, which materially contributed to the fatal accident.

2.  Where the yard master of the defendant directed the conductor of the freight train to run his train upon a certain track, and informed him that it was clear, when there was standing upon it a car or cars with which the train was liable to collide, such direction was negligence on the part of the yard master, and constituted the proximate cause of the accident.

3.  The yard master, the brakeman and the conductor were all fellow-servants of the deceased car inspector, and if his death was the result of the negligence of any or all of these persons, the defendant would not be liable. But the superintendent was not a fellow-servant, but a vice principal, and if the death was caused by his negligence the defendant would be liable.

4.  It is within the province of the Court to construe written instruments, and it is their duty, with the aid of the testimony, to determine the meaning of said telegram. A fair interpretation of the telegraphic order would be that the disabled car, being next to the cabin car, should be placed where it could be safely carried.

5.  *Held* that the telegram was sufficiently explicit and not misleading, and that the conductor erred in his interpretation of it, and that in so doing, and in putting said car before the cabin car, and in attaching them together as was done, he was guilty of negligence; but being a fellow-servant of the deceased, such negligence was not sufficient to charge the defendant.

6.  Where notice is given of crippled cars by placing upon them what is known as shop cards, which denote that they are injured and to be taken to the shop for repair, such notice is sufficient and the defendant is not negligent in failing to give notice.

SHUSTER vs. P. B. & W. R. R.                    5

OPINION.

7. As the proper place in a train for a crippled car would depend upon the character of its injury, it would be impracticable to prescribe by a general rule the place in which all such cars should be placed, and therefore there was no negligence on the part of the defendant in failing to provide rules.

8. *Held*, that there was no evidence upon which a jury would have been justified in finding a verdict for the plaintiff, and that they were properly instructed to find a verdict for the defendant.

(*January* 16, 1906.)

NICHOLSON, Ch., and SPRUANCE and BOYCE, J. J., sitting.

*William S. Hilles* and *William W. Knowles* for plaintiff in error.

*Herbert H. Ward* and *Andrew C. Gray* for defendant in error.

Supreme Court, June Term, 1905.

WRIT OF ERROR to the Superior Court for New Castle County.

SPRUANCE, J. (delivering the opinion of the Court):—This action was brought by the plaintiff, the widow of Mahlon C. Shuster, for the recovery of damages for the death of her husband, alleged to have been caused by the negligence of the defendant company.

Under instruction of the Court, the jury rendered a verdict for the defendant. To this instruction and the rulings of the Court as to the admission and rejection of certain testimony, the plaintiff excepted.

At the time of the accident which caused the death of Shuster, and for several years before that time, he was in the employ of the defendant as a car inspector.

As such inspector it was his duty to examine cars at the Edge Moor Yard of the defendant, near the City of Wilmington, for the purpose of ascertaining whether they were in proper condition to be used in the business of the defendant.

The yard contained eighteen or twenty tracks and was divided into two sections. As a train came in it was run upon one of these tracks, inspected, and made up for its passage to the point of its destination.

On July 22, 1903, a Pennsylvania Railroad box freight car, with the draw-bar pulled out, and part of the end sill off, was at Seaford, Delaware. On the same day, Alfred Larimore, the conductor of a freight train from Delmar, bound north, received at Seaford from R. L. Holliday, Superintendent of the Delaware

Division of the defendant company, a telegram, giving the number of said car and directing him as follows: "Move this car from Seaford to Edge Moor. Take it on next to your cabin car."

The conductor testified that he understood this to mean that he should place said car next ahead of the cabin car, and he, with the assistance of two of his train crew, did so place it in his train, and made it fast to the cabin car, which was the last car of the train, by means of a chain which he had found about the truck of the damaged end of the injured car.

When, by whom, or for what purpose the said chain had been put upon the injured car is not disclosed by the evidence.

The damaged car appears to have been attached to the cabin car as securely as was possible by means of said chain, and the journey from Seaford to the Edge Moor Yard was made without accident, notwithstanding the fact that there was more slack or play between these cars than there would have been had they been connected by means of the usual coupling.

Arriving at the Edgemoor Yard, the yard master ordered the conductor to back his train on Track No. 4, saying that everything was clear. This was in the evening after dark, about 8.05 according to one witness, and after 8.35 according to another. Thereupon the train was backed slowly in on said track, at the rate of between four and five miles an hour; the brakeman Murphey standing on the top of the disabled car, as a lookout, and Shuster and another car inspector, who had boarded the train while backing in on said track, sitting on the platform of the cabin car next to the disabled car, when the moving train came in violent collision with a car or cars standing on said track, and the shop car, the sill of which was from four to eight inches higher than the sill or platform of the cabin car, rode over and demolished the cabin car, and so injured Shuster and the other car inspector that they both died shortly thereafter.

It is clear that the proximate cause of the accident was the negligence of the yard master in directing the conductor to run his train upon track No. 4, and informing him that it was clear, when there was standing upon it a car or cars with which the train was liable to collide.

Whether there was negligence on the part of the brakeman standing on the top of the disabled car, is not clear from the evidence.

If the conductor misinterpreted the telegram of the superintendent, and placed the injured car before, when he should have placed it behind the cabin car, and coupled them together by means of the chain, instead of the usual and uninjured coupling on the good end of the injured car, he was guilty of negligence, which, to say the least, materially contributed to the fatal accident.

But the yard master, the brakeman and the conductor were all fellow-servants of the car inspector Shuster, and if his death was the result of the negligence of any or all of these persons, the defendant would not for this cause be liable in this action.

*Wheatley vs. P. W. & B. R. R. Co.*, 1 *Marvel* 305; *Creswell vs. W. & N. R. R. Co.*, 2 *Pennewill* 210.

On the other hand Mr. Holliday, the superintendent, was not a fellow servant of Shuster, but a vice principal, and if the death of Shuster was caused by the negligence of the superintendent the defendant would be liable.

*McKinley on Fellow Servants*, *p*. 292; 3 *Elliott on Railroads*, *Sec*. 1321; 4 *Thompson on Negligence*, *Sec*. 4951.

It therefore becomes important to determine whether the superintendent was guilty of negligence in sending to the conductor the telegram given above.

It is within the province of the Court to construe written instruments, and it is our duty, with the aid of the testimony in the case, to determine, if we can, the meaning of said telegram

While the order of the superintendent was to take the disabled car on next to the cabin car, it did not state whether it was to be placed before or behind the cabin car. A fair interpretation of the order would be that the disabled car, being next to the cabin car. should be placed where it could be safely carried.

There is no evidence that this car was crippled except at one end, and we can see no reason why it should not have been put behind, and with its uninjured end next to the cabin car, and attached to it by the usual coupling.

The uncontradicted testimony is to the effect that the accident would probably not have occurred had the shop car and the cabin car been coupled together with the usual coupling, and that the usual, safe and proper place for a car with a broken coupler is behind the cabin car.

Conductor Larimore testified that if he had been using his own judgment he would have put said car behind the cabin car, but that he understood the said telegram to mean that he should put it next before the cabin car—and for that reason he did so.

We think that the said telegram was sufficiently explicit, and was not misleading, and that the conductor erred in his interpretation of it, and that in so doing, and in putting said car before the cabin car, and in attaching them together as was done, he was guilty of negligence—but, as before stated, he was the fellow-servant of Shuster, and such negligence is not sufficient to charge the defendant in this action.

It is claimed by the plaintiff that the defendant was guilty of negligence in failing to give to its car inspectors proper notice of the dangerous condition of the injured car.

It is in evidence that it was the custom of the defendant to give notice to all concerned of the condition and destination of crippled cars by placing upon them what were known as shop cards, which denoted that they were injured and were to be taken to the shops for repair; and also that the crippled car in this case had on each side of it, in the usual place, a shop card of this character.

It will be observed that in this case the injured car, at the time of the accident, was not being used by the defendant in its business. It was empty, had been laid off at Seaford because it was not fit for use, and was being carried to the shop for repairs.

This case differs essentially from that of *Rodney vs. St. Louis S. W. Railway Co.*, 28 *South West Rep.* 887, where the defendant was held liable for injuries to an employee while coupling a damaged car.

In that case the car had some time before been laid off at damaged and marked as such, but at the time of the accident it

was without any danger mark and was being used in the ordinary business of the company.

Under all the circumstances of this case we think that there was no negligence on the part of the defendant in failing to give other notice of the damaged car than was given.

It was urged by the plaintiff that the defendant was guilty of negligence because it failed to provide proper rules for the conduct of its large and complicated business, in that it had no written or printed rule fixing the place in a train in which a crippled car should be put, or prohibiting car inspectors from riding upon a train while it was being run in upon the track for inspection.

As the proper place in a train for a crippled car would depend upon the character of its injury, it would be impracticable to prescribe by a general rule the place in which all such cars should be placed.

It appears to have been usual for the car inspectors to ride upon trains while being run in on the tracks for inspection, and that this, if not absolutely necessary, was a convenience to them in the prosecution of their work.

We are of the opinion that there was no negligence on the part of the defendant in failing to provide rules.

Having found that the death of Shuster was not occasioned by any negligence for which the defendant is liable in this action, it is not necessary to consider whether there was contributory negligence on the part of Shuster.

Nor is it necessary for us to consider the assignments of error relating to the rulings of the Court below as to the admission and rejection of testimony, as this subject was not discussed in the argument before us, and none of said rulings appear to affect in any way the question as to the negligence of the defendant.

We are of the opinion that there was no evidence upon which the jury would have been justified in finding a verdict for the plaintiff, and that the jury were properly instructed to find for the defendant, and that the judgment below should be affirmed.

And it is so ordered.